UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRENDA L. SCHROEDER,

        Plaintiff,

v.                                            Case No. 10-C-959

SHAWANO COUNTY et al.,

        Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brenda Schroeder filed suit on October 26, 2010 against Defendants Shawano County and the Maple Lane Health Care Center (Maple Lane), asserting claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA) and Title VII arising out of the termination of her employment with Maple Lane. (ECF No. 1). (Schroeder's case is a companion case to one already decided by this Court, *Hopfensperger v. Shawano County et al.*, 10-CV-960.) Schroeder was born on September 2, 1958 and was over forty at the time of her termination. At issue presently is the motion for judgment on the pleadings brought by the County. The County contends Schroeder's theory — that she was terminated because the County wanted to "rescue a financially troubled nursing home" — fails to state an actionable claim for age discrimination and fails to serve as a basis upon which a retaliation claim may lie. The County alternatively argues it is entitled to summary judgment because Schroeder is unable to produce evidence on which a jury could find in her favor on either claim. For the reasons given below, the County's motion for summary judgment will be granted.

## BACKGROUND

Maple Lane is a nursing facility that provides services for residents who are not able to care for themselves. (Defs.' Proposed Findings of Fact, DPFF ¶ 4.) Maple Lane was owned and operated by Shawano County until it was sold in April 2012. (*Id.*) As a skilled nursing facility, Maple Lane was required to comply with applicable federal statutes and regulations relating to the care and treatment of residents in order to maintain its Medicare and Medicaid certification. *See* 42 U.S.C. § 1396 et seq., 42 C.F.R. § 483 *et seq.*, Wis. Stat. § 50.09; *see also* DPFF ¶ 5.

Schroeder began working at Maple Lane in 1977 as a Certified Nursing Assistant. (Am. Compl. ¶ 8.) In 1990, she became the Activity Program Supervisor at Maple Lane and remained in that position until her termination. (Am. Compl. ¶ 8.)

Richard Mucha was a resident of Maple Lane in November and December of 2008. ( DPFF ¶ 1.) Due to a stroke, bilateral amputation of his lower extremities, and diabetes, Mucha was unable to mobilize on his own and required a wheelchair to move around the facility. (*Id.* ¶ 3.)

On December 29, 2008, Kathleen Schallock, former Interim Nursing Home Administrator of Maple Lane, was approached at the facility by Mr. Mucha's daughter (Michelle Gall) and wife (Betty Mucha) regarding complaints that they had about the facility's treatment of Mr. Mucha. (*Id.* ¶ 16.) Gall and Ms. Mucha explained Mr. Mucha wanted to leave Maple Lane because of problems Richard experienced with Barbara Hopfensperger, the Activity Program Director, Schroeder, and the Activity Program Coordinator, Breitrick. (*Id.* ¶ 18.) Hopfensperger and Schroeder were department heads and considered management within the facility. (*Id.* ¶ 19.) Breitrick was an employee in the Activities Department who reported to Schroeder and who did not have any managerial responsibilities. (*Id.* ¶ 20.)

2

The Mucha family informed Schallock the most recent problem arose out of Hopfensperger's and Schroeder's failure to arrange transportation for Mr. Mucha to his great granddaughter's Christmas Eve program, despite the family's request for transportation more than one week prior to the event. (*Id.* ¶ 22.) Maple Lane owned two wheelchair-equipped vans to transport wheelchair bound residents outside of the facility. (*Id.* ¶ 8.) The vans could be and were used for transporting residents to individual activities (such as church, appointments, and family gatherings) and could also be used for group community outings (such as shopping and going to restaurants). (*Id.* ¶ 9.) Hopfensperger and Schroeder had allegedly advised Gall and Ms. Mucha that Maple Lane could not transport Mr. Mucha to the Christmas program and that the family would have to find transportation on their own. (*Id.* ¶ 23.) As a result, Mr. Mucha missed the program. (*Id.* ¶ 17.) He was extremely upset and demanded to be transferred out of Maple Lane. (*Id.* ¶ 24.)

Gall and Ms. Mucha expressed to Schallock several other concerns with the facility, most of which were primarily directed at Hopfensperger and Schroeder but also included one allegation against Breitrick. (*Id.* ¶ 25.) The allegation against Breitrick arose out of an incident in which Breitrick allegedly accused Mr. Mucha of swearing at another resident and purportedly harassed him about his action. (*Id.* ¶ 26.) At Schallock's request, Gall and Ms. Mucha subsequently confirmed their concerns in writing in a letter dated December 29, 2008. (*Id.* ¶ 27.) In addition to the claims about which Ms. Mucha and Gall verbally informed Schallock, the complaint letter asserted that Hopfensperger and Schroeder confronted and harassed Mr. Mucha in his room following a meeting the two women had with Schallock. (*Id.* ¶ 28.) None of the information contained in the allegations was reported to Schallock prior to her discussions with the Mucha family. (*Id.* ¶ 30.)

3

Schallock determined the statements made by the Mucha family constituted allegations of potential mistreatment, neglect, and abuse of a resident and that Maple Lane was required by state or federal nursing home regulations to investigate the allegations. (*Id.* ¶ 31.) Accordingly she placed Hopfensperger, Schroeder, and Breitrick on administrative suspension on December 30, 2008 and retained Steven Janikowski (Janikowski), a registered nurse from Pathways Health Services (Pathways), to conduct an investigation into the alleged mistreatment of Mr. Mucha. (*Id.* ¶¶ 32, 34.) Between December 31, 2008 and January 5, 2008, Janikowski interviewed Hopfensperger (represented at the interview by Attorney Aaron Birnbaum), Schroeder, Breitrick, and several other staff from Maple Lane who cared for Mr. Mucha. (*Id.* ¶¶ 36–37.) Janikowski also reviewed several records including Mr. Mucha's medical, activity and social service records, his personal account, the wheelchair van policy, the job descriptions for the Facilities Social Worker, Activity Supervisor and Activity Coordinator and reviewed the services provided by the facility. (*Id.* ¶ 36.) After completing his investigation, Janikowski prepared a report summarizing his findings. (*Id.* ¶ 38.)

Janikowski concluded Schroeder was guilty of abusing Mucha and informed Shawano County of his conclusion. (*Id.* ¶ 39.) He determined Schroeder intentionally attempted to harm Mr. Mucha because she did not arrange for transportation for him to his great granddaughter's Christmas program and instead attempted to pass responsibility for transportation to the family. (*Id.* ¶ 40.) Janikowski further determined Schroeder abused Mr. Mucha by confronting him when she learned of his psychological condition rather than trying to intervene and address his issues. (*Id.* ¶ 41.) Specifically, Janikowski determined Schroeder did not follow her job description. (*Id.* ¶ 42.) Because Schroeder was found guilty of abuse, Shawano County was required, under its abuse

4

policy, to terminate her. (*Id.* ¶¶ 135, 137.) Janikowski similarly concluded Hopfensperger's actions in dealing with Mr. Mucha caused him psychological harm and constituted abuse. (*Id.* ¶ 43.) Janikowski did not, however, find Breitrick psychologically harmed or abused Mr. Mucha. (*Id.* ¶ 44.)

Following the completion of Janikowski's investigation, the County's Administrative Coordinator, Frank Pascarella, terminated Schroeder's employment. (*Id.* ¶ 56.) Pascarella determined termination was warranted because Schroeder failed to meet Mr. Mucha's psychological needs, did not provide Mr. Mucha with the services he required, and caused him psychological harm. (*Id.* ¶ 56.) He determined Schroeder failed to perform her required job duties as Activities Program Supervisor. (*Id.* ¶ 57.) Pascarella also terminated Hopfensperger following the investigation. (*Id.* ¶ 61.) Breitrick was not terminated because she was not found to have abused Mr. Mucha. (*Id.* ¶ 62 .) Moreover, the allegations against Breitrick arose out of an incident which occurred four to five years earlier and the evidence indicated Breitrick properly handled the incident with Mr. Mucha by reporting it to her supervisor. (*Id.* ¶ 63.)

Schroeder's counsel appealed Pascarella's decision to terminate her to the County's Administrative Committee pursuant to a procedure in the County's policy manual which allows the Committee to review, and if appropriate, reverse a termination decision. (*Id.* ¶ 65.) On April 29, 2009, the Committee concluded an evidentiary hearing at which Pascarella, Schallock, and Janikowski testified regarding the termination. (*Id.* ¶ 66.) Schroeder was represented at the hearing by counsel, Aaron Birnbaum and James Birnbaum, who were present at all times during the evidentiary portion of the meeting. (*Id.* ¶ 67.) Counsel was allowed to question witnesses and to present evidence and argument in support of Schroeder's appeal of the termination. (*Id.* ¶ 68.)

5

Following the close of the case, the Administrative Committee deliberated in a closed session. (*Id.* ¶ 69.) The Committee's deliberations related solely to the evidence presented surrounding the investigative findings of patient mistreatment and abuse by Schroeder and the resulting psychological harm to Mr. Mucha and evidence of Schroeder's failure to perform in accordance with her job requirements. (*Id.* ¶ 71.) Following deliberations, the Committee reconvened in an open session and voted to sustain Schroeder's termination. (*Id.* ¶ 72.) Plaintiff was initially replaced by Tracy Wessel, who was 29 years old and expected to perform the same job functions as Plaintiff. (*Id.* ¶ 75.)

## LEGAL STANDARDS

Defendant has moved for both judgment on the pleadings and summary judgment. Each is governed by different rules. Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment after the parties have filed the complaint and answer. Judgment on the pleadings is only proper where the moving party has clearly established that there are no unresolved material issues of fact and he or she is entitled to judgment as a matter of law. *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). In deciding a motion for judgment on the pleadings, the court "must view the facts in the light most favorable to the nonmoving party," but "is not bound by the nonmoving party's legal characterizations of the facts." *Id.* Generally, the court may consider only "matters presented in the pleadings," *id.*, which "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

Under Rule 56(c), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* Once the moving party has demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show that there is a genuine dispute as to the material facts of the case. *Id.* at 323–24. The responding party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

The ADEA prohibits an employer from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (2003). To establish a claim under the ADEA, a plaintiff-employee must show that "the protected trait (under the ADEA, age) actually motivated the employer's decision"— that is, the employee's protected trait must have "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Such a claim may be proven through direct evidence of the employer's discriminatory motive, or through the indirect, burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

7

Direct evidence usually requires an admission by the decisionmaker that his actions were based on age. *Balderston v. Fairbanks Morse Engine Div. Of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003). When a plaintiff chooses to proceed under the direct method, she must present evidence of discriminatory animus, *i.e.*, a "smoking gun," or circumstantial evidence which establishes discriminatory motive through a longer chain of inferences. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010).

To prove a claim under the indirect method, a plaintiff must demonstrate that she (1) was over 40 years old; (2) was meeting her legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than younger, similarly situated employees. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). If the plaintiff succeeds in establishing a prima facie case, this creates a rebuttable presumption of discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's discharge. *Little v. Ill. Dep't of Rev.*, 369 F.3d 1007, 1011 (7th Cir. 2004). Once an employer articulates a legitimate, nondiscriminatory rationale for termination, the burden shifts back to the plaintiff to demonstrate the proffered reason is merely pretextual. *Id.* It is not enough for a plaintiff to focus on just one of these elements; at a minimum he must demonstrate a triable issue as to each element in order to survive summary judgment. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1003 (7th Cir. 2002). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

**ANALYSIS**

**A. Judgment on the Pleadings**

The County's motion for judgment on the pleadings focuses on a single allegation of Schroeder's complaint: "Upon information and belief, Defendants were attempting to terminate the employment of its older and higher-paid employees and continuing to employ in order to reduce costs for a financially burdened nursing home." (Am. Compl., ECF No. 8, ¶ 16.) The County argues that Schroeder's allegation that it terminated her employment as part of a plot to save money by getting rid of older and higher-paid employees, even if true, is not actionable under the ADEA as a matter of law.

In support of its argument, the County notes that in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993), the Supreme Court held that it was not age discrimination for an employer to fire a 62-year-old employee in order to prevent the employee's pension benefits from vesting. Consistent with *Hazen Paper Co.*, the Seventh Circuit held in *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125–26 (7th Cir. 1994), that firing employees solely to reduce salary costs is not age discrimination. Applying that principle here, the County argues that because the Amended Complaint alleges that its motivation in terminating Schroeder's employment was to save money, it fails to state a claim under the ADEA.

The problem with the County's argument is that it has denied this very allegation in its Answer to Schroeder's Amended Complaint. (Answer, ECF No. 9 ¶ 16.) Thus, the County has in its own pleading placed the very fact which it claims entitles it to judgment on the pleadings in dispute. It is clear from its brief that what the County actually seeks is dismissal of Schroeder's ADEA claim for failure to state a claim under Rule 12(b)(6). In essence, the County's argument is that by alleging that the County's motivation was to cut costs, Schroeder has plead herself out of

9

court. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (noting that plaintiff can "plead himself out of court by pleading facts that show that he has no legal claim").

Even viewed as a Rule 12(b)(6) motion, the County's challenge to the Amended Complaint fails. Viewed in its totality, the Amended Complaint is sufficient to state an ADEA claim against the County. Schroeder alleged that at the time she was terminated she was over forty years old, she was replaced by someone under the age of 40, similarly situated employees under the age of 40 who were accused of abuse by patients or their families were not terminated, and that the County's actions were in violation of the ADEA. These allegations are sufficient to state a claim under the ADEA. Schroeder's assertion that the County's actions were motivated by a desire to cut costs adds confusion to her claim but it does not show that she has no claim under the ADEA. Accordingly, the County's motion for judgment on the pleadings is denied.

**B. Summary Judgment**

Alternatively, the County claims it is entitled to summary judgment on both of Schroeder's claims because she is unable to produce any evidence from which a jury, acting reasonably, could find in her favor. I will address her ADEA claim first.

**1. ADEA CLAIM**

Lacking any direct evidence of age animus on the County's part, Schroeder here relies on the indirect method to demonstrate age discrimination in violation of the ADEA. The first and third elements of her ADEA claim are not in dispute: Schroeder was over forty years old at the time and she undeniably suffered an adverse employment action, as she was terminated. The dispute centers on the second and fourth elements.

10

### a. LEGITIMATE JOB EXPECTATIONS

In order for Plaintiff's claim to survive under the second element, she must demonstrate evidence exists that indicates she was performing her job according to the County's legitimate job expectations at the time of her discharge. *Moser v. Ind. Dept. of Corrections*, 406 F.3d 895, 901 (7th Cir. 2005); *Griffin*, 356 F.3d at 828; *see also Kodl v. Bd. of Ed. Sch. Dist.*, 490 F.3d 558, 562 (7th Cir. 2007). The inquiry requires the court to look at Schroeder's job performance through the eyes of her supervisors at the time of her termination. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002); *Fortier v. Ameritech Mobile Communications Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998).

Plaintiff argues she was, in fact, meeting her legitimate job expectations (and thus that she meets the second factor of the indirect method requirements.) But Schroeder makes no real reference of any kind to her previous job performance. (DPFF ¶ 100.) Plus, previous positive performance evaluations are insufficient to demonstrate the adequacy of performance when an employment action is taken for a specific instance of misconduct; they cannot, standing alone, create a genuine issue of material fact on summary judgment. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010); *Moser*, 406 F.3d at 901; *Fortier*, 161 F.3d at 1113. Furthermore, an employee's conclusory (and self-serving) statements regarding her own performance are insufficient to contradict the employer's negative assessment of that performance and do not create an issue of material fact on summary judgment. *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 842–43 (7th Cir. 1996).

Notwithstanding these principles, Defendant points to evidence to suggest Schroeder's previous job performance was not uniformly positive as she suggests. For example, on December

11

9, 2008, the State issued an "immediate jeopardy" (IJ) citation to Maple Lane during a survey of the facility based on the failure of the facility to implement policies and procedures that prohibited mistreatment and abuse of residents as required by 42 C.F.R. § 483.13(c) relating to "Staff Treatment of Residents." (DPFF ¶ 113.) The IJ was issued based on the State's identification of numerous incidents of resident-to-resident abuse and aggression which were documented from February 2008 to December 2008 for which the facility did not implement or follow its policies and procedures for ensuring a safe environment for residents. (DPFF ¶ 114.) The State survey also identified several other violations of the federal code including the failure to report, investigate and prevent instances of resident-to-resident abuse in violation of 42 C.F.R. § 483.13(c), failure to comply with the requirements for comprehensive care plans under 42 C.F.R. § 483.20(k)(1) and (2), failure to comply with 42 C.F.R. § 483.20(k)(3)(ii) which requires services to be provided or arranged by qualified persons in accordance with each resident's plan of care, and failure to comply with F353 (42 CFR § 483.30(a)) relating to the provision of sufficient nursing staff. (DPFF ¶ 115.) According to Defendant, the violations identified in the State survey were indicative of Schroeder's failure to perform her job duties as the Activities Program Supervisor. (DPFF ¶ 116.) Defendant suggests the citations and information contained in the State survey demonstrated Schroeder and her staff were not properly uncovering, recording, reporting or following up on resident-to-resident abuse and other behavioral issues of residents at the facility. (DPFF ¶¶ 117–119.)

Furthermore, there is a thorough record of a very specific incident that occurred and altered the employer's view of the employee. Schroeder admits she was found guilty of causing psychological harm and abusing Mr. Mucha. As Defendants note, "the issuance of the IJ and the other citations issued as a result of the State survey directly implicated Schroeder's failure to fulfill

12

her duties as Activities Facility Supervisor." (ECF No. 12 at 21.) As such, even if Schroeder could demonstrate a prima facie case of age discrimination under the indirect method, she cannot produce evidence sufficient to create a genuine issue of material fact that the County's stated reasons for her termination were pretextual, as the County's initial decision to terminate Schroeder was subsequently upheld on appeal. The Administrative Committee held an evidentiary hearing at which Schroeder was represented by counsel, was given the opportunity to examine witnesses, and presented her own case. Thus, even taking the facts alleged by Schroeder in a light most favorable to her, I cannot say she has raised a genuine issue of material fact as to the true reason for her termination.

Admittedly, from the facts before me, it seems strange to view a refusal to give a ride (and the resulting confrontation) as so invidious as to constitute psychological harm or abuse. But this Court's role is not to determine whether the County had, for example, good cause to terminate Schroeder; instead it is the Court's duty to determine whether or not Plaintiff has set forth any evidence of age discrimination. In this instance, an independent investigator (Janikowski) concluded Schroeder "abused" Mr. Mucha, at least as he understood the governing regulations. There is no evidence or even suggestion of collusion on the part of Janikowski and the County, and nothing from his investigation or the facts before me suggest this termination had anything to do with age. Accordingly, while Schroeder may have a point that this termination is odd or perhaps even unduly harsh, that does not mean that it was motivated by consideration of her age.

### b. YOUNGER, SIMILARLY SITUATED EMPLOYEES

Plaintiff's case is also deficient on the fourth element of the indirect method. To succeed on her claim, Plaintiff must point to some evidence that demonstrates she was treated less favorably

13

than younger, similarly situated employees outside of her protected class. *Martino v. MCI Comm. Servs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009). But Plaintiff points to no evidence to suggest she was treated less favorably than younger employees, nor does she propose any such similarly situated employees. Plaintiff instead suggests County's disparate treatment was an attempt "to terminate the employment of its older and higher-paid employees and continuing to employ [sic] in order to reduce costs for a financially burdened nursing home." (Am. Compl. ¶ 16.) Schroeder thus indicates she believes the County treated her differently than younger employees in an effort to save money. As already noted, however, such motivation is not actionable under the ADEA. *See, e.g., Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994) (holding that an employer's action to reduce salary costs is not an actionable claim under the ADEA).

Plaintiff was initially replaced by Tracy Wessel, who was 29 years old and expected to perform the same job functions as Plaintiff. (DPFF ¶ 75.) But Plaintiff fails to demonstrate she was treated less favorably than any similarly situated employees. A showing of substantial similarity entails that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Antonetti v. Abbott Laboratories*, 563 F.2d 587, 592 (7th Cir. 2009); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Courts look for "comparators, not 'clone[s]'." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citing *Chaney v. Plainfield Healthcare Center*, 612 F.3d 908, 916 (7th Cir. 2010)). Precise equivalence between employees is not the ultimate goal; rather, the touchstone of the similarly-situated inquiry is whether the employees are "comparable." *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 283 (1976). Schroeder suggests Marsha Opperman is such

14

a similarly situated employee. (DPFF ¶ 82.) Opperman was accused of yelling at a resident in February 2008, was investigated by Maple Lane for mistreatment of a resident and, following the investigation, was placed on a two week suspension and further restricted from working on the unit where the incident occurred. (DPFF ¶ 83.) But Opperman is not such a similarly situated employee. For one, Opperman was not under 40 herself; rather Opperman is 47 years old, thus she is not the traditional image of a "younger" similarly situated employee. (DPFF ¶ 85.) Opperman was not a Department Head at Maple Lane like Schroeder but rather was a certified nursing assistant. (DPFF ¶ 88.) Additionally, Opperman reported to the Director of Nursing rather than the Nursing Home Administrator (to whom Schroeder reported). (DPFF ¶ 89.) She was also a union member working under a collective bargaining agreement. (DPFF ¶ 90.) Finally, there is no evidence that Opperman, in her 2008 incident, caused psychological harm, nor was she found guilty of abuse. (DPFF ¶ 91.) Given these facts, I conclude Opperman is not a comparable employee. Plaintiff thus cannot succeed on the fourth element. Schroeder has pointed to no younger, similarly situated employee to raise a genuine issue of material fact under the indirect method of age discrimination. Defendant's motion for summary judgment is thus granted on this ground as well.

### 2. RETALIATION

Plaintiff also claims the County retaliated against her after she expressed her opposition to what she perceived as age discrimination. She bases her claim on the fact she was terminated after she retained counsel and sent a letter to the County complaining of the investigation and her suspension. (Am. Compl. ¶¶ 17–18.) She claims that Breitrick, who did not retain counsel or send a letter, was not terminated. (*Id.*)

Retaliation may be proved through direct and indirect evidence. *O'Leary v. Accretive*

*Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). To satisfy the direct method of a retaliation claim, the plaintiff must present direct evidence that: (1) she engaged in a statutorily protected activity; (2) an adverse action was taken by her employer; and (3) there was a causal connection between the activity and the adverse action. *Id.* The indirect method utilizes a modification of the *McDonnell Douglas* factors and does not require a showing of causation. Under the indirect method, a plaintiff must show she (1) engaged in statutorily protected activity, (2) met the employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *see also Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011). If the plaintiff is able to successfully establish these elements, the defendant then has the burden to come forward with a legitimate, non-discriminatory reason for the adverse action. *Id.* If the defendant is able to do so, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id.*

Regardless of which method a plaintiff uses to show retaliation, she must first demonstrate that she engaged in protected activity under the ADEA. *O'Leary*, 657 F.3d at 631. Schroeder must show that she took some step in opposition to a form of discrimination the ADEA prohibits. *Id.* Schroeder need not show that the practice she opposed was a violation of the ADEA; she may be mistaken and still claim protection. *Id.* However, her opposition must be based on a good faith and reasonable belief that she is opposing unlawful conduct. *Id.* If she does not honesty believe that she is opposing a practice prohibited by the statute, or if her belief is unreasonable, her opposition is not protected. *Id.* at 631.

16

The conduct Schroeder complained about in her December 31, 2008 letter to the County— that the County was focusing on "older, long term" employees "in a desire to rescue a financially-troubled nursing home — was neither unlawful nor actionable under the ADEA. It is not a violation of the ADEA to terminate an older employee because the employee was about to vest in his pension because a termination based on financial considerations was not the product of the impermissible stereotypes the ADEA was designed to prevent. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). The Seventh Circuit followed in 1994 in Anderson holding that a termination of an older employee which was undertaken to save money was not actionable under the ADEA. *Anderson*, 13 F.3d at 1125. In light of this precedent, the claim Schroeder makes in her 2008 letter is not for conduct that is unlawful or actionable under the ADEA.

Schroeder nonetheless argues her claim for retaliation based on the opposition set forth in her December 31, 2008 letter should survive because "all that is required is that she *reasonably* believed in good faith that the practice she opposed violated Title VII." ( sic ) (emphasis added) (ECF No. 21 at 17.) A reasonable belief, however, is an objective, not a subjective test. Here, Schroeder has not offered any evidence that her belief — that she was opposing age discrimination in the workplace in her December 31, 2008 letter — was objectively reasonable. She makes no assertions that any action taken by the County was the result of an inappropriate stereotype related to age, such as that workers over 40 are less productive, more rigid, or slower to learn than younger employees. *See Hazen Paper Co.*, 507 U.S. at 611 ("It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age"). Her claim for retaliation must therefore be dismissed.

17

Furthermore, even assuming, *arguendo*, Schroeder could establish that her belief was objectively reasonable, her claim for retaliation would still fail. As discussed above, Schroeder has failed to establish that Opperman was a similarly situated employee. Opperman is not a comparable employee as she was not a department head and did not act or have the responsibilities of a manager at the facility. Additionally, the facts and circumstances surrounding the claims against Opperman are factually distinct from Schroeder. Opperman's alleged incident did not result in an investigation with findings of psychological harm and abuse. Additionally, Opperman is a union member subject to a collective bargaining agreement. For these reasons, Opperman is not a similarly situated employee who did not oppose discrimination and was treated differently. Schroeder points to no such employee other than Opperman; as Opperman does not meet this requirement, Schroeder's argument cannot stand.

Finally, Schroeder has not offered any evidence that the County's stated reasons for termination on the retaliation claim are pretextual. Schroeder cites to no additional evidence in her deposition testimony or interrogatory responses in support of her retaliation claim which suggests that the County did not honestly believe the nondiscriminatory reasons it offered for plaintiff's termination. Schroeder's claim for retaliation is therefore dismissed on several grounds.

## CONCLUSION

In sum, Defendant has demonstrated no genuine issue of material fact remains with respect to Plaintiff's termination. Particularly, Plaintiff has introduced no meaningful evidence to suggest she was performing her legitimate job expectations; she was found guilty of abuse by both an investigator and a subsequent appeal through an administrative hearing. Additionally, Plaintiff has

pointed to no material evidence that she was treated differently than similarly situated, younger employees. Finally, Plaintiff's claim for retaliation fails for similar reasons. Defendant's motion for summary judgment (ECF No. 11) is accordingly GRANTED. The Clerk is directed to enter judgment in favor of the Defendant County dismissing the action with prejudice.

**SO ORDERED** this __24th__ day of April, 2012.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge